# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 13-1116

**LILLIAN E. LANDAICHE ROY, ET AL.**

**VERSUS**

**SHERIFF BILL BELT, ET AL.**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
TWELFTH JUDICIAL DISTRICT COURT
PARISH OF AVOYELLES, NO. 99-6398-B/A
HONORABLE MARK A. JEANSONNE, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## MARC T. AMY
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, John D. Saunders, Marc T. Amy, James T. Genovese and Phyllis M. Keaty, Judges.

**AFFIRMED.**

**Thibodeaux, Chief Judge, dissents for the reasons expressed by Judge Genovese.**

**Genovese, J., dissents and assigns reasons.**

**R. Gray Sexton**
**10715 N. Oak Hills Parkway**
**Baton Rouge, LA  70810**
**(225) 767-2020**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
   **Lillian E. Landaiche Roy**
   **Constance Elizabeth Roy**
   **Sheldon Louis Roy**
   **Catherine Marie Roy**
   **Lillian Elizabeth Roy**

**Ricky L. Sooter**
**Jeremy C. Cedars**
**Provosty, Sadler, deLaunay, Fiorenza & Sobel**
**Post Office Drawer 1791**
**Alexandria, LA   71309-1791**
**(318) 445-3631**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
    **Lillian E. Landaiche Roy**
    **Constance Elizabeth Roy**
    **Sheldon Louis Roy**
    **Catherine Marie Roy**
    **Lillian Elizabeth Roy**

**A. Kell McInnis, III**
**2829 Reymond Avenue**
**Baton Rouge, LA   70808**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
    **The Unopened Succession of Patrick Lemoine**
    **Charles A. Riddle, III**

**Charles A. Riddle, III**
**Post Office Box 608**
**Marksville,   LA 71351**
**(318) 253-4551**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Alma Rita Gremillion Riddle, et al.**

**Rodney M. Rabalais**
**Rabalais & Roy**
**Post Office Box 447**
**Marksville, LA   71351**
**(318) 253-4622**
**COUNSEL FOR DEFENDANTS/APPELLEES.:**
    **Law Enforcement District of Avoyelles Parish, Louisiana**
    **Doug Anderson, Present Sheriff of Avoyelles Parish**

**Robert Allen Johnson**
**Johnson Law Firm, L.L.C.**
**Post Office Box 468**
**Marksville, LA   71351**
**(318) 253-0935**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Avoyelles Parish Police Jury**

**AMY, Judge.**

The plaintiffs in this matter alleged that the local law enforcement district had encroached on their property. In previous proceedings in this court, judgment was entered in favor of the plaintiffs, and the matter was remanded for a determination of damages. Subsequently, the defendants sought to have the matter dismissed as abandoned. After a contradictory hearing, the trial court found that abandonment had occurred and dismissed the case. The plaintiffs appeal. For the following reasons, we affirm.

## Factual and Procedural Background

The original plaintiffs, Lillian Elizabeth Landaiche Roy, Constance Elizabeth Roy, Catherine Marie Roy, Sheldon Lewis Roy, and Lillia Elizabeth Roy, own property adjacent to that owned by the original defendants, Sheriff William J. "Bill" Belt and the Law Enforcement District of Avoyelles Parish (collectively, the "Sheriff").[1] In 1999, the Roys filed suit, contending that the boundary between the two pieces of property is north of Bayou Sauvage.[2] Further, the Roys alleged that the parish jail, which was constructed on the north side of Bayou Sauvage, encroached on the Roys' property. Several other third party defendants were added, including the Avoyelles Parish Police Jury and the heirs of the landowners who sold the property to the Police Jury.

---

[1] The record indicates that Lillian Elizabeth Landaiche Roy passed away in June of 2004. Constance Elizabeth Roy and Sheldon Lewis Roy, as Mrs. Roy's executors, were substituted as party plaintiffs. We observe that Mrs. Roy is also referred to as "Lillia Elizabeth Landaiche Roy" and "Lillia Elizabeth Landaiche Roy Patterson" in the record. We use the spelling contained in the original petition. Additionally, Constance Elizabeth Roy is also referred to as "Constance Elizabeth Roy Holderer" in the record, and Lillia Elizabeth Roy is referred to as "Lillian Elizabeth Roy" in the record. We use the spellings contained in the original petition. Further, since the institution of this lawsuit, Doug Anderson has been elected as Sheriff of Avoyelles Parish.

[2] Bayou Sauvage is also referred to as "Bayou Savage" in the record.

According to the record, trial was held in 2002. After taking the matter under advisement, Judge William J. Bennett of the Twelfth Judicial District Court, Division "B", recused himself, and the matter was reassigned to Judge Kerry L. Spruill of Division "A". However, Judge Spruill also recused himself from this matter. Thereafter, the supreme court appointed an ad hoc judge to hear the case. The ad hoc judge, Judge William P. Polk, Jr., rendered judgment in favor of the Sheriff. However, in *Roy v. Belt*, 03-1022 (La.App. 3 Cir. 2/18/04), 868 So.2d 209, *writ denied*, 04-1149 (La. 7/2/04), 877 So.2d 147 (*Belt I*), a panel of this court reversed, finding in favor of the Roys. This court stated that the boundary line "between the Roys' property and Sheriff Belt's property is found to be that depicted on surveys prepared by Ralph Gagnard dated March 28, 1964[,] and James Townsend dated September 16, 1996." *Id.* at 215-16. The panel remanded the matter for a determination of damages.

However, according to the defendants' brief, Judge Polk passed away on November 21, 2003, several months before the panel's decision in *Belt I* was rendered. In October of 2004, the plaintiffs filed a motion to substitute parties, which was granted by the successor Division "A" judge, Judge Mark A. Jeansonne. According to the record, several other actions were taken in the case in 2004-2005, including a motion to compel filed by the plaintiffs. We note that Judge Jeansonne signed the orders associated with those actions, and there is nothing in the record indicating that any party objected to Judge Jeansonne's involvement in the case. On September 27, 2005, the plaintiffs filed a motion to continue the scheduled trial without date, "pending the receipt of an appraisal[.]" The record indicates that the next action taken in the case was motion for telephone status conference filed by

2

the plaintiffs on May 25, 2012.[3]

On June 21, 2012, the defendants filed an ex parte motion to dismiss the matter as abandoned. A contradictory hearing was held on the issue of abandonment, and Judge Jeansonne found that the matter was abandoned and dismissed the case.

The plaintiffs appeal, asserting that the trial court erred in dismissing the case on the grounds of abandonment.

## Discussion

*Abandonment*

Louisiana Code of Civil Procedure Article 561 addresses the abandonment of actions, stating, in relevant part:

> A. (1) An action, except as provided in Subparagraph (2) of this Paragraph, is abandoned when the parties fail to take any step in its prosecution or defense in the trial court for a period of three years, unless it is a succession proceeding:
>
> (a) Which has been opened;
>
> (b) In which an administrator or executor has been appointed; or
>
> (c) In which a testament has been probated.
>
> . . . .
>
> (3) This provision shall be operative without formal order, but, on ex parte motion of any party or other interested person by affidavit which provides that no step has been timely taken in the prosecution or defense of the action, the trial court shall enter a formal order of dismissal as of the date of its abandonment.

"[A]bandonment is not meant to dismiss actions on mere technicalities, but to dismiss actions which in fact have clearly been abandoned." *Clark v. State*

---

[3] The record also contains a letter from the plaintiffs' attorney to Sheriff Anderson dated July 21, 2010.

*Farm Mut. Auto. Ins. Co.*, 00-3010, p. 9 (La. 5/15/01), 785 So.2d 779, 786. Thus, La.Code Civ.P. art. 561 should be liberally construed in favor of maintaining a plaintiff's action. *Id.* Accordingly, in order to avoid abandonment, a plaintiff must take some "step" towards prosecution of their lawsuit. "In this context, a 'step' is defined as taking formal action before the court which is intended to hasten the suit towards judgment, or the taking of a deposition with or without formal notice." *Id.* at 784. Further, the step must be taken within the prescribed time period of the last step taken by either party. *Id.* The step must also be taken in the proceeding at issue and appear in the record, with the exception of formal discovery. *Id.*

Additionally, there are two jurisprudential exceptions to the abandonment rule. *Clark*, 785 So.2d 779. The first, based on the doctrine of *contra non valentem*, applies when the failure to prosecute is caused by circumstances beyond the plaintiff's control. *Id.* The second applies when the defendant takes "actions inconsistent with an intent to treat the case as abandoned" and therefore waives his right to assert abandonment. *Id.* at 785.

On appeal, the trial court's determination of whether a "step" in the prosecution of an action has been taken is a finding of fact which is subject to the manifest error standard of review. *Lyons v. Dohman*, 07-53 (La.App. 3 Cir. 5/30/07), 958 So.2d 771. However, whether that "step" precludes abandonment is a question of law which the appellate court reviews by determining whether the trial court's decision is correct. *Id.*

*Circumstances beyond the Plaintiffs' Control*

The plaintiffs argue that because the supreme court did not issue an order removing this matter from Judge Polk's authority until 2012, which was more than eight years after his death, there was a circumstance beyond their control which

4

precludes abandonment. The defendants contend that the plaintiffs continued to prosecute their action in 2004-05 and therefore acquiesced to Judge Jeansonne's handling of the case. Additionally, the defendants argue that the plaintiffs could have requested the court take action to determine whether it was appropriate for Judge Jeansonne to hear the case.

According to our review, after Judge Polk passed away in 2004, the following items are contained in the record:

1) Motion and Order Substituting Parties Plaintiff, filed October 14, 2004, and signed by Judge Jeansonne on October 14, 2004;

2) Letter from Judge Jeansonne to the Louisiana Supreme Court, dated December 1, 2004;[4]

3) Notice of Setting Conference, signed by Judge Jeansonne on December 3, 2004;

4) Motion to Enroll as Counsel for the Heirs of Charles Riddle, Jr. and Patrick Lemoine, Third Party Defendants, filed December 20, 2004, and signed by Judge Jeansonne on December 20, 2004;

5) Notice of Status Conference, signed by Judge Jeansonne on December 29, 2004;

6) Notice of Trial by Judge, signed by Judge Jeansonne on January 7, 2005;

---

[4] Judge Jeansonne's letter of December 1, 2004, states:

Dear Justice Knoll:

The above matter was pending before the 12th JDC, and both judges (Bennett, Div. B. and Spruill, Div. A) recused themselves. Judge William Polk was appointed. Judge Polk subsequently passed away. Meanwhile, the 3rd Circuit has remanded Judge Polk's ruling back to the 12th JDC.

As successor judge in Div. A, I have no reason to recuse myself. Thus I assume I am the proper judge to preside over this matter. Please contact me if anything further is needed in this matter.

Cordially,
Mark A. Jeansonne
Judge, Div. A

7) Motion to Compel Discovery Responses, filed by plaintiffs on May 3, 2005, and set for hearing on June 3, 2005, by accompanying order signed by Judge Jeansonne on May 12, 2005;

8) Motion to Continue, filed by plaintiffs on May 26, 2005, and set for telephone status conference on June 14, 2005, by accompanying order signed by Judge Jeansonne on May 26, 2005;

9) Notice of Trial by Judge, signed by Judge Jeansonne on June 14, 2005;

10) Order setting deadlines, signed by Judge Jeansonne on September 15, 2005;

11) Motion to Continue trial setting without date on the basis that plaintiffs "have been unable to secure an expert appraiser in time for the trial[,]" filed on September 27, 2005, and accompanying order signed by Judge Jeansonne on September 27, 2005.

The next item in the record is a letter from plaintiffs' counsel concerning settlement to Sheriff Anderson dated July 21, 2010.[5] Thereafter, nothing was filed until the plaintiffs filed a Motion for Telephone Status Conference on May 18, 2012. The Sheriff subsequently filed a motion to dismiss as abandoned, which was set for contradictory hearing by Judge Jeansonne. The record indicates that on July 2, 2012, Judge Jeansonne sent a second letter to the supreme court concerning whether he was the proper judge to hear the case. Soon thereafter, Judge Jeansonne notified the parties that he could "hear any pleadings that may be filed[,]" and the supreme court issued an order on July 16, 2012, rescinding Judge Polk's appointment as ad hoc judge in this case.

_____

[5] Although the parties focus on the Motion for Status Conference filed on May 18, 2012, we also note that the plaintiff's letter dated July 21, 2010, was sent to the defendants more than three years since the last "step" in the case, which was filed on September 27, 2005. Notwithstanding the inclusion of this letter in the record, "[s]teps in negotiations do not become a formal step in litigation merely by virtue of being filed in the record." *Clark*, 785 So.2d at 783. Additionally, actions taken by the plaintiffs after the abandonment period has accrued cannot serve to prevent a judgment of dismissal from being entered. *Lyons*, 958 So.2d 771.

At the contradictory hearing, Judge Jeansonne rejected the plaintiffs' contention that they were unable to prosecute the case due to circumstances beyond their control, noting that changes in court personnel do not supersede the abandonment doctrine.

In *Ledet v. Firemen's Insurance Co. of Newark, New Jersey*, 327 So.2d 645, 646 (La.App. 4 Cir.), *writ denied*, 330 So.2d 914 (La.1976), the fourth circuit rejected a plaintiff's argument that error by the clerk of court in misfiling a motion to fix for trial was a circumstance beyond the plaintiff's control, stating:

> Admittedly plaintiff's counsel, for a reasonable period of time, would have no reason to suspect his signed order placing the case on the proper call docket for fixing and trial had been misfiled; however, we do think his inquiry and attention would have been excited before five years[6] had elapsed.
>
> In our view the failure of the deputy clerk of court to process this signed order is not a circumstance beyond the control of the litigant that would interrupt the tolling of the five-year period for statutory abandonment prescribed in C.C.P. art. 561. In other words, there were available means to the plaintiff whereby he could have, within the five-year period, furthered the prosecution of his claim.

Similarly, in *Faust v. Greater Lakeside Corp.*, 03-808 (La.App. 4 Cir. 11/26/03), 861 So.2d 716, *writ denied*, 04-424 (La. 4/2/04), 869 So.2d 887, the plaintiffs appealed a grant of summary judgment dismissing some, but not all, defendants from their lawsuit. The defendants who were not involved in the appeal filed a motion to dismiss as abandoned, contending that, although the plaintiffs had been actively prosecuting their appeal, they had taken no action in the trial court as to the remaining defendants. *Id.* The fourth circuit found that the abandonment period was not interrupted while the plaintiffs were prosecuting their appeal as to some, but not all, of the defendants. *Id.*

---

[6] The time period for abandonment of an action in La.Code Civ.P. art. 561(A) was amended from five years to three years by 1997 La. Acts No. 1221, § 1, effective July 1, 1998.

7

Further, although the plaintiffs in *Faust* also argued that a stay they had sought and obtained in the trial court constituted circumstances beyond their control which prevented them from prosecuting their case, the fourth circuit found that the *contra non valentum* exception did not apply. *Faust*, 861 So.2d 716. In so finding, the fourth circuit stated "we find it inconceivable that the plaintiff in an action can request a stay order, leave it in place for three years without taking any action to try to lift it, and then claim that the stay order prevented the case from being abandoned." *Id.* at 721. *See also Lee v. Commodore Holdings, Ltd.*, 00-1551 (La.App. 4 Cir. 12/6/06), 947 So.2d 158 (finding that, for purposes of abandonment, it was incumbent upon the plaintiff to occasionally inquire whether the automatic stay issued in bankruptcy proceedings had been lifted), *writ denied*, 07-300 (La. 4/20/07), 954 So.2d 163. *Compare with Ellzey v. Employers Mut. Liability Ins. Co.*, 388 So.2d 843 (La.App. 2 Cir.) (finding that letters sent to the clerk of court requesting that a matter be set for trial constituted a "step" in the prosecution of the action, even though the clerk neither filed the letters in the record nor acted on by the clerk of court), *writ denied*, 394 So.2d 617 (La.1980).

Having reviewed the record, we find no error in the trial court's determination that the death of Judge Polk and subsequent issue concerning which judge had the authority to hear the case did not create a circumstance out of the plaintiffs' control. Notwithstanding the plaintiffs' argument that there was no judge with the authority to hear the case prior to the supreme court's July 2012 order, "there were available means to the plaintiff[s] whereby [they] could have … furthered the prosecution of [their] claim." *Ledet*, 327 So.2d at 646. At the hearing, Judge Jeansonne stated that any party could have asked him if he was the appropriate judge, and he would have written to the supreme court. Further, we

note that this potential issue was actually resolved when such a letter was sent to the supreme court by Judge Jeansonne.

Accordingly, we find no error in the trial court's conclusion that the *contra non valentum* exception to abandonment does not apply. This argument is without merit.

*Waiver by the Defendants*

The plaintiffs also contend that the defendants waived abandonment by engaging in informal discovery in 2010. They allege that they were contacted by one of the Sheriff's lawyers who requested an appraisal. However, our review of the record indicates that, at the contradictory hearing, the plaintiffs conceded that the defendants did not request the appraisal, but that they took the initiative in forwarding the appraisal to the defendants. Further, the record reveals that the plaintiffs stated that their sole basis for their opposition to abandonment was the *contra non valentum* argument.

At the hearing, the Sheriff's lawyer, Wesley Elmer, testified that he had not enrolled in this matter. According to Mr. Elmer, he did not know anything about this matter until he received a copy of a letter from the plaintiffs in July of 2010. Mr. Elmer testified that he "checked into it" and turned the matter over to the Sheriff's attorney of record in this case. Thereafter, as pointed out by the defendants, the plaintiffs conceded that their sole basis for opposing abandonment was the "authority issue." In so doing, the plaintiffs' attorney stated:

> Your Honor, having talked to my client and just trying to figure it out. I didn't have anything in my file that indicated a letter of contact from Wesley Elmer from him in writing. I recalled at the time because of the process and that's why I put it in my memorandum that, because I didn't know who was representing the new sheriff in the matter, if there was new representation because nothing had happened in the matter and so . . .

. . . .

. . . the issue for me was, of course I didn't know Mr. Elmer even represented Sheriff Anderson in any capacity at all … so the issue for me is, and I think having talked to my client, that what actually happened was we didn't have a value for the property, we had a hard time getting an appraisal, we finally got one because nobody knew the value of the property, that's why I sent it to Sheriff Anderson because I didn't know who was representing him directly in the matter.  I think just as Mr. Elmer testified, I think after the letter was sent he did call me, so my time frame instead of being January of 2010, it may have been in fact August or so of 2010 that he contacted me because I only recall a telephone conversation with him about the matter, period.  That's all I recall and as counsel has indicated we sent the appraisal and nothing more took place.  There was no more communication, counter offer, any discussion at all after sending that Your Honor.

Having heard this evidence, the trial court found that there was no evidence that the defendants took a position inconsistent with regard to abandonment of the litigation.  The trial court's finding of fact with regard to whether a "step" in the prosecution of an action has been taken is subject to the manifest error standard of review.  *Lyons*, 958 So.2d 771.  Based on our review of the record, we find no error in the trial court's finding of fact with regard to this issue.

This assignment of error is without merit.

**DECREE**

For the foregoing reasons, the trial court's judgment dated July 12, 2013, dismissing the plaintiffs-appellants' action as abandoned is affirmed.  Costs of this matter are allocated to the plaintiffs-appellants.

**AFFIRMED.**

LILLIAN E. LANDAICHE ROY, ET AL.

VERSUS

SHERIFF BILL BELT, ET AL.

**GENOVESE, J., dissents and assigns the following reasons:**

In this boundary action, the majority affirms the trial court's judgment finding Plaintiffs' lawsuit to have been abandoned. I disagree.

The facts in this case are not in dispute; hence, this is not a true manifest error case. In my view, this case presents a question of law.

Abandonment is not favored, and the abandonment statute, La.Code Civ.P. art. 561, must be liberally construed in favor of maintaining the action. *Clark v. State Farm Mut. Auto. Ins. Co.*, 00-3010 (La. 5/15/01), 785 So.2d 779. This case has a peculiar history and set of facts. Not only does this case involve a deceased judge whose subsequent and official replacement was not named until after the abandonment period had run, but Plaintiffs also have in place a definitive judgment as to liability.

As in most tort actions, there are two parts to this civil boundary action: liability and damages. It is undisputed, and the record clearly reflects, that this appellate court ruled in favor of the Plaintiffs as to Defendant's liability for inverse condemnation and remanded the case to the trial court for a determination of damages.

This presents the legal query: "Can a lawsuit be deemed completely abandoned when there is in place a final and definitive judgment on the issue of

liability?" I think not. But assuming, arguendo, that the lawsuit is legally abandoned, then what is the legal effect of the definitive judgment as to liability? Is it not a judicial mortgage? And, taking it a step further, does the majority opinion negate, perempt, or overrule this appellate court's decision establishing liability in favor of the Plaintiffs, the effect of which is to have Plaintiffs with an actionable judgment as to liability, but no legal remedy as to damages?

In my view, the majority opinion in this case effectuates an indeterminate disposition of the matter. Liability is definitively established, but Plaintiffs have no legal remedy to pursue damages.

This case presents exceptional circumstances. Because our law demands a liberal construction in favor of maintaining an action, I would reverse the trial court judgment of abandonment and maintain the action.