STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

15-804

CAJUNS FOR CLEAN WATER, LLC, ET AL.

VERSUS

CECELIA WATER CORPORATION, ET AL.

ON REMAND FROM THE
LOUISIANA STATE SUPREME COURT

\*\*\*\*\*\*\*\*\*\*
ON WRIT OF REVIEW FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF ST. MARTIN, NO. 82253-B
HONORABLE PAUL J. deMAHY, DISTRICT JUDGE
\*\*\*\*\*\*\*\*\*\*

SYLVIA R. COOKS
JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, Jimmie C. Peters, and James T. Genovese, Judges.

**AFFIRMED.**

John Michael Parker
L. Adam Thames
Ashley C. Meredith
Taylor, Porter, Brooks & Phillips L.L.P.
P.O. Box 2471
Baton Rouge, LA  70821-2471
(337) 387-3221
**Attorneys for Defendants/Relators, Cecelia Water Corporation d/b/a
  Cecilia Water Corpopration, et al.**

Dean J. Guidry
The Guidry Law Firm
P.O. Box 5255
Lafayette, LA  70502
(337) 266-2250

**Attorneys for Defendants/Relators, Cecelia Water Corporation d/b/a
  Cecilia Water Corpopration, et al.**

Jacques P. Soileau
Soileau & Soileau
P.O. Box 344
Breaux Bridge, LA  70517
(337) 332-4561
**Attorney for Plaintiffs/Respondents
  Cajuns for Clean Water, L.L.C., et al**

**COOKS, Judge.**

Cajuns for Clean Water, LLC, Jacqueline Berard, and Brandi Berard (Plaintiffs) filed a petition for damages in St. Martin Parish on January 15, 2015, against Cecelia Water Corporation d/b/a Cecilia Water Corporation[1] (Defendant or Cecilia Water) and its unknown insurer. The LLC alleges in the petition that Jacqueline Berard has assigned to it certain litigious rights in this matter. The petition for damages alleges Plaintiffs are residential, commercial and recreational customers who were provided water resources exclusively by Defendant for ten years prior to filing suit. The suit alleges Defendant is a privately held, non-profit corporation awarded a publicly registered monopoly under state and local laws contractually obligated to provide Plaintiffs with water. The suit also alleges Defendant is contractually obligated to provide "water to its customers in compliance with minimal standards and guidelines, in accordance with state and federal laws and regulations, and in sufficient quantity and quality so as not to impair, impede, or obstruct the usability of the water or access to water…" The suit further alleges:

> Breach of any of the terms of the aforesaid legal and contractual obligations of a public water supplier, which result in damages to its customers, such as those of the Defendant Cecelia Water, give rise to multiple claims for damages by those customers, including but not limited to the following: (1) breach of contract, (2) redhibition, (3) products liability, (4) negligent chemical assault and/or bodily trespass, (5) general tort and negligence, and (6) detrimental reliance, amongst others.

> Defendant Cecelia Water has been careless, negligent, reckless, and wanton in the provision of water to Plaintiff customers herein, and in the maintenance, upkeep, and management of its water distribution system, which constitutes a breach of their contractual and legal

---

[1] In this opinion we refer to the Defendant as Cecilia Water using the correct spelling of this name. In Plaintiffs' petition the Defendant is often referred to as "Cecelia Water" and we therefore do not change the spelling in quoted material.

obligations to Plaintiffs, and which breaches have caused the Plaintiffs herein actual compensable damages . . . .

Plaintiffs' suit alleges Defendant breached its contractual obligations to them over a period of ten years of service by failing to provide "wholesome, reliable, and usable water[.]" These alleged breaches include, but are not limited to, certain instances specified in the lawsuit as follows:

(1)     Bacterial MCL violations in 2008 and in 2010;

(2)     Arsenic MCL violations in 2006, in 2007, in 2010, and 2013;

(3)     Extraordinarily low or zero water pressure to its customers (meaning universal unavailability of water to its customers for extended periods of time) from January 1-31, 2010; from September 5-31, 2013; and f from January 15-February 15, 2014, among others; and

(4)     Specific directives issued by Defendant Cecelia Water to its customers in 2013 and 2014, either requiring them to boil water using it (at extra cost to customers) for significant periods of time, or severely restricting the otherwise ordinary usability and access to the water and water service that they were paying for. Both the boil orders and the alleged limited availability of water itself were caused by breaches of Cecelia Water's legal and contractual obligations to its customers.

[ ]

Each of the foregoing breaches as to either the quantity or the quality of the water made available to customers of Cecelia water have caused the Plaintiffs in this lawsuit extensive damages . . . .

Plaintiffs also allege in their petition Defendant received requested rate increases and federal loans to cover the costs of addressing the alleged deficiencies but have instead used the funds to add more customers to their already overloaded capability further compounding the problems of quantity and quality of the water being provided. The petition sets forth allegations of intentional, wanton, and reckless conduct by Defendant which has caused direct harm to Plaintiffs through biologically contaminated water as well as arsenic-laced water, all contrary to its

contractual and legal obligations to provide safe and sanitary drinking water to its customers. The alleged damages suffered by Plaintiffs include, but are not limited to:

(1) Out of pocket expenses, including but not limited to, for purchasing bottled water, hotel rooms for family bathing, replacement costs of property damaged by outages;

(2) Loss of use and enjoyment of their property, homes, and businesses;

(3) Mental anguish and emotional distress, and particularly on being in their homes or businesses for weeks on end and being unable to bathe, flush fecal matter from their toilets, cook, or clean for multiple weeks.

Plaintiffs also include *as an element of alleged damages* for Defendant's alleged breach of contract, negligence, and bad faith a "reduction in the purchase price and/or return of the purchase price" of the "defective water[.]" They also seek "incidental damages" allegedly caused by the defective, unusable water as well as "attorney's fees, expert witness fees, and costs[.]" Plaintiffs allege their damages were caused by Defendant's "carelessness, recklessness, and negligence" more particularly described in their Petition for Damages. The Plaintiffs also allege tort injury by "chemical battery and/or bodily trespass" as a result of Plaintiffs drinking contaminated water delivered to them by Defendant. They assert this battery has resulted in physical injury to themselves, their children, and guests which has caused serious mental anguish, emotional pain and suffering, and bodily injury. Lastly, Plaintiffs allege the water supplied by Defendant is an unreasonably dangerous product as defined by Louisiana's Products Liability Act. Plaintiffs allege the water supplied "was defective in that it suffered from a manufacturing defect and was either not filtered or treated and/or was improperly filtered or treated or processed before it was delivered to Plaintiffs for

3

consumption[.]" They further allege the water "was defective in that it suffered from breach of an express or implied warranty of usability and fitness for consumption, within the meaning of the Louisiana Product[s] Liability Act."

Defendant filed declinatory exceptions of Lack of Subject Matter Jurisdiction, Prematurity, No Right of Action and No Cause of Action along with a Motion to Stay Proceedings in District Court pending the outcome of an administrative hearing before the Louisiana Public Service Commission. After a hearing on the exceptions the trial court denied Defendant's Exception of Lack of Subject Matter Jurisdiction and Prematurity. The trial court granted Defendant's Peremptory Exception of Prescription and No Right of Action/No Cause of Action but allowed Plaintiffs thirty days to file an amended complaint. The trial court denied Defendant's Motion to Stay. Defendant filed a supervisory writ with this court which was denied stating "We find no error in the trial court's ruling." The Louisiana state supreme court granted Defendant's writ and remanded the case for briefing, argument and a full opinion. During the pendency of this appeal the Louisiana legislature enacted a bill signed into law by Governor Edwards on June 9, 2016, La.R.S. 45:1601-03, which exempts privately owned, non-profit water suppliers like Cecilia Water Corporation from Louisiana Public Service Commission (LPSC) regulations. After being apprised of this legislative change and the subsequent Order by the LPSC, this court, *sue sponte*, filed a rule to show cause why this appeal should not be dismissed as moot. We gave the parties an opportunity to file briefs on the rule to show cause and both have timely submitted briefs.

**ANALYSIS**

4

Clearly under the new state law Cecilia Water Corporation, Inc. is no longer subject to the authority of the LPSC's Regulations. It meets the criteria defining it as an exempt "non-profit" water cooperative and the LPSC has issued a General Order making it clear that "In simple terms, the Act provides for a regulatory scheme similar to the regulation that existed from 1969-2010" which made such non-profit water cooperatives exempt from LPSC's Regulations. Under that regulatory scheme the "United States Department of Agriculture assumes regulatory authority over these Water Cooperatives." LPSC General Order, June 03, 2016, adopted July 29, 2016, and La.R.S. 45:1601-03. Thus, from 2005 to 2010, Cecilia Water was not subject to regulation by the LPSC but Defendants assert that Plaintiffs' claims, including those alleged to have occurred during this five-year time period, must first be presented to the LPSC before the district court may exercise its jurisdiction.

Defendants assert in their brief to this court that "Cecelia Water [Corporation] is regulated by, and subject to the oversight of, the Louisiana Public Service Commission" and therefore Plaintiffs must first file any complaint concerning Cecilia Water with the LPSC. According to the LPSC, newly enacted La.R.S. 45: 1601-03 exempts Cecilia Water from LPSC's regulatory authority. Additionally, according to the LPSC they did not have nor exercise regulatory authority over Cecilia Water for a period of five years during which time certain of Plaintiffs' claims are alleged to have occurred. Defendant acknowledges that Plaintiffs' tort and contract claims are properly under the jurisdiction of the district courts, but, it maintains, that because Plaintiffs' suit includes claims for "rate relief" they must first exhaust administrative review before the LPSC because it has exclusive jurisdiction over public utility rates. Defendant admits that

5

La.Const. art. 5, § 16 gives district courts exclusive original jurisdiction over "all civil and criminal matters, unless there is other jurisdictional authorization in the Constitution," but assert that the LPSC is vested with jurisdiction over public utilities in La.Const. art. 4 § 21(B), and by virtue of the provisions of La.R.S. 45:1163-67, as those existed at the time of the filing of their brief. In response to the rule to show cause, Defendant asserts that if newly enacted La.R.S. 45: 1601-03 divests the LPSC of jurisdiction over Cecilia Water it is unconstitutional. The LPSC has not voiced an objection to the new law as being unconstitutional and has implemented a General Order in conformity with the legislative enactment. The LPSC's General Order adopted on July 29, 2016, also makes clear that the LPSC did not exercise authority over these types of water cooperatives from 1969 to 2010. Moreover, if the new statute and LPSC's General Order raise a question of constitutionality, the LPSC is powerless to make such a determination:

> [T]he courts of this state have consistently held that administrative agencies do not have the authority to determine questions of constitutionality. *Albe v. Louisiana Workers' Compensation Corporation*, 97-581 (La. 10/21/97), 700 So.2d 824, 827-828. Determination of constitutionality of acts of the legislature represents the highest exercise of judicial power and one that even the judiciary is reluctant to exercise. *Albe*, 700 So.2d at 828.

*In re Jeffery J. Arnold*, 07-2342, pp. 7-8 (La.App. 1 Cir. 5/23/08), 991 So.2d 531, 537.

Defendant also asserts Plaintiffs' suit attacks the "type and extent of utility services provided by Cecelia Water" and therefore their suit falls within the exclusive jurisdiction of the LPSC. In response to the rule to show cause in this court Defendant asserts the new law affects only the LPSC's authority to regulate future rates charged by water cooperatives like Cecilia Water but has no "retroactive effect" concerning the "former rates."

Plaintiffs plainly and simply assert that their petition speaks for itself in both its allegations of tort, breach of contract, products liability, and redhibition, and in the form of relief and type of damages sought. An examination of Plaintiffs' pleadings discloses Plaintiffs case is not a rate case. Plaintiffs seek reimbursement or refunds of what they paid based on the rates set by LPSC after 2010, but they at no time attack such rates or seek to have the rates modified. There is no issue of retroactivity of a newly enacted statute here because the new statute only addresses the proper governing authority which can exercise regulatory power over water companies like Cecilia Water. Clearly, according to the LPSC, it no longer has regulatory authority over water "cooperatives" or "non-profits" such as Cecilia Water and has no intention of exercising authority over them. The LPSC explains the historic treatment of these water systems in its General Order adopted July 29, 2016, and plainly states that the new legislation "[i]n simple terms . . . provides for a regulatory scheme similar to the regulation that existed from 1969-2010." According to the LPSC it first exempted these type water systems from its regulatory authority in 1969 by a minute entry and they were thereafter regulated by the United States Department of Agriculture (USDA) until 2010, when the USDA "refrained from establishing rates for these systems effective December 31, 2010." The LPSC, "in response to the USDA's proposed course of action[,]" rescinded its previous exemption and resumed rate jurisdiction over these water non-profits. Recognizing that newly enacted La.R.S. 45: 1601-03 provides for a return to the USDA regulatory scheme used from 1969-2010, the LPSC issued a General Order reestablishing the prior exemption of these non-profits from "the Commission's Regulations." The LPSC made no objection to the new law as

7

unconstitutionally infringing on its authority but instead merely acknowledged the change as to what governing body now has authority over these entities.

It is not necessary, however, that we rule on Defendant's alleged constitutional claim, a claim which we note is not properly before us, because we find the settled law on the subject clearly favors affirming the trial court action. The state supreme court has provided the method by which our courts determine whether the courts or an administrative body have jurisdiction in the first instance to hear a dispute. In *Opelousas Trust Authority v. CLECO Corp.,*12-622, 12-623, 12-636, p. 16 (La. 12/4/12), 105 So.3d 26, 36 (emphasis added) the court explained:

> Pursuant to this Court's precedent, if plaintiffs' claims are matters of contract and tort law, they would generally constitute civil matters over which the district court has original jurisdiction. However, merely phrasing their allegations in terms of contract and tort law does not end the jurisdictional inquiry. This Court has held "[T]he manner in which plaintiffs couch their claims does not automatically vest jurisdiction in the district court; rather, the nature of the relief demanded is dispositive." *Daily Advertiser* [612 So.2d at 16] (*citing CLECO* [601 So.2d at 1386]. *Thus, to determine which tribunal has original jurisdiction over this case, this Court must look to the relief requested by the parties and determine whether this is a rate case subject to the LPSC's original jurisdiction or a contract claim.*

Our sister circuit court in *Town of Sterlington v. Greater Ouchita Water Co.*, 49,315, p. 4 (La.App. 2 Cir. 10/1/14), 149 So.3d 952, 955, relying on the state supreme court's decision in *Central Louisiana Electric Co., Inc. v. Louisiana Public Service Commmission*, 601 So.2d 1383 (La.1992) reiterated:

> The supreme court has discussed the framework for selecting between the PSC's authority to regulate rates and the district court's authority to apply and enforce Louisiana laws:
>
> > Thus, the PSC has constitutional and statutory jurisdiction over subject matters which principally involve the right to fix and regulate rates charged by and services furnished by public utilities. The Legislature has

8

never "provided by law" for the PSC to exercise jurisdiction over other subject matters and areas of litigation in which public utilities are involved, such as tort actions and contract disputes. It is therefore necessary at the outset to determine the relief demanded

by all parties in order to resolve the subject matter jurisdiction issue.

*Central Louisiana Elec. Co.,* 601 So.2d at 1386.

Our examination of the relief sought by Plaintiffs in this case leaves us no doubt the trial court properly found this case is not a rate case but presents claims which only the district court has original jurisdiction to hear and render relief if warranted. This case presents claims for which Plaintiffs seek damages none of which are within the power or authority of the LPSC to grant or deny. Plaintiffs seek monetary damages for breach of contract, redhibition, products liability, detrimental reliance, and tort negligence including "chemical battery and/or bodily trespass." They seek a money judgment which will justly and fully compensate them for their alleged losses which include pain and suffering, mental anguish and emotional distress, and bodily injury as a result of Plaintiffs and their family members ingesting dangerous and defective water allegedly supplied by Cecilia Water. They seek monetary damages as compensation for the amounts they paid for water allegedly unfit and unsafe to drink or use for any purpose. They seek monetary damages as compensation for an allegedly unreasonably dangerous product provided by Cecilia Water to Plaintiffs, their families and invitees all within the meaning of the Louisiana Products Liability Act. Plaintiffs seek a monetary award sufficient to cover the cost of purchasing and installing a filtration or treatment system in their homes and businesses served by Cecilia Water to prevent future exposure to unsafe water supplied by this public monopoly. They

seek compensation for the expert fees and attorney fees incurred in pursuing this litigation. Nowhere in the petition do Plaintiffs seek a change in the rate charged for the water provided by Cecilia Water. The only mention of rate has merely to do with the amount of money Plaintiffs claim they are entitled to receive if they prove their allegations, i.e. recovery of the amount they paid for a worthless and/or unreasonably dangerous product. Only the district courts of this state have the original jurisdiction to hear such matters and render just compensation not the LPSC.

For these reasons we affirm the trial court judgment and remand this case for further proceedings. All costs of this appeal are assessed against Cecelia Water Corporation d/b/a Cecilia Water Corporation.

**AFFIRMED**.